*634 OPINION OF THE COURT
John P. Lane, J.
This decision memorializes in greater detail than stated on the record the reasons for my ruling that a health care faculty member of the State University of New York (State University or SUNY) may testify in support of his patient’s claim and be compensated for an appearance in this court. Ralph Benedict, a neuropsychologist who is an associate professor in the Neurology Department of the School of Medicine at the State University of New York at Buffalo, has been called as a witness for Nichelle Gilbert. Dr. Benedict, whose position is tenured, is classified as a geographic full-time faculty member. He also is an employee of University Neurology, Inc., a not-for-profit corporation formed to carry out a State University policy for the management of clinical practice income of members of the Neurology Department.
Public Officers Law § 73 was enacted to regulate the business and professional activities of a host of State officers and employees, including those associated with the State University, as well as some political party officers. Subdivision (3) (a) provides that, among others,[1] a “full-time salaried state officer or employee” shall not receive “any compensation, in whatever form” for appearing or rendering services “against the interest of the state” in connection with any Court of Claims action. Subdivision (3) (b) provides that State officers and employees, not otherwise subject to section 73, who are required to file annual financial disclosure statements pursuant to Public Officers Law § 73-a[2] shall not receive compensation for appearing or rendering services “against the interest of the state agency by which [they are] employed or affiliated” in connection with any Court of Claims action.
Public Officers Law § 73 (1) (a) does not define the word “salary,” but “compensation” is defined as “any money, thing of value or financial benefit conferred in return for services *635 rendered or to be rendered.”[3] The Board of Trustees of the State University has adopted a comprehensive policy for the management of clinical practice income of faculty members at each State University School of Medicine and School of Dentistry and at the College of Optometry. (See, 8 NYCRR part 340.) Clinical practice is defined as the act of providing all forms of medical and health care and other activities for which a professional fee is customarily charged. Clinical practice income includes professional fees as well as salaries paid by affiliated institutions, but not basic annual salary paid from State funds, to an employee holding academic rank. Any employee, other than an intern, resident or fellow, who serves in a position of academic rank and performs professional services for which a fee is customarily charged or a salary is customarily paid must be a member of a clinical practice management plan. Each plan must provide for a central billing and accounting system to record collection and disbursement of clinical practice income. The chief administrative officer of the plan establishes the maximum allowable compensation which each plan employee may earn, including salary paid from State funds, clinical practice income, salary from an affiliated hospital and research grants. Within this limit, each participant receives a share of the net fee income generated by the not-for-profit corporation formed to administer the plan.
Pointing to the definition of compensation and to Benedict’s status as a geographic full-time associate professor, defendant argues that his earnings from the University Neurology, Inc. practice plan and the perquisites[4] he enjoys as a faculty member are compensation within the meaning of section 73 and that he is precluded from testifying in this case if he is to be compensated by claimant for his appearance. This argument is based on a misreading of the statute and on an incorrect assumption that the two words — salary and compensation — are synonymous and can be used interchangeably.
A violation of section 73 may be punished by a civil penalty or prosecuted and punished as a misdemeanor. (Public Officers Law § 73 [14].) Accordingly, section 73 is a penal statute and must be strictly construed. (McKinney’s Cons Laws of NY, Book *636 1, Statutes §§ 271, 273.) Contrary to the State’s argument, the broad definition of compensation found in section 73 is of no use in determining which employees are affected. The statute was carefully crafted to apply to only two classes of employees: (1) full-time salaried employees, who may not testify against the interest of the State, and (2) employees not otherwise subject to the provisions of section 73, who are required to file annual statements of financial disclosure pursuant to section 73-a, who may not testify against the interest of the State agency by which they are employed or with which they are affiliated. Certainly, it was not the intention of the Legislature that all State employees be barred from compensation for services to be rendered in relation to a matter before the Court of Claims against the interest of the State.
Benedict does not fall within the second group of employees (see, n 2) and, thus, the State’s preclusion argument can be sustained only if he is a full-time salaried employee of SUNY. The label gebgraphic full time attached to his faculty rank is misleading. A geographic full-time faculty member is by definition a person serving on the faculty of a SUNY medical center who is not employed on a full-time basis but is available to the State on a full-time basis for clinical and instructional purposes. (8 NYCRR 326.1 [j].) Although he is theoretically on-call to lecture on a full-time basis, Benedict has never been more than an occasional lecturer at the Medical School. More significantly, he receives no salary or fringe benefits from SUNY.[5]
Benedict’s employment income is derived solely from professional fees and other earnings generated by University Neurology, Inc. The State’s suggestion that this income and the nonmonetary benefits he enjoys as a part-time lecturer should be considered the equivalent of a State-funded salary is not appealing. Words used in a penal statute such as Public Officers Law § 73 are generally given their usual, ordinary and commonly accepted meaning, as understood by ordinary citizens; they are not to be given tortuous meanings or extended to cases not clearly within their terms. (McKinney’s Cons Laws of NY, Book 1, Statutes § 271 [c].) Salary is commonly understood *637 to mean “[a] fixed periodical compensation paid for services rendered; a stated compensation, amounting to so much by the year, month, or other fixed period” (Black’s Law Dictionary 1503 [4th ed rev 1968]). Accordingly, I find that Benedict is not a full-time salaried State employee governed by Public Officers Law § 73 (3).
The State’s contention that its Code of Ethics (Public Officers Law § 74) requires the preclusion of Benedict’s testimony is also without merit. While the State has not identified any particular standard in that Code as being applicable here, if section 73 were ignored, Benedict’s appearance on behalf of Nichelle Gilbert arguably might be considered conduct raising public suspicion that he is violating a trust (Public Officers Law § 74 [3] [h]); no other standard seems to apply. However, as sections 73 and 74 were enacted at the same session of the Legislature and their subjects are interrelated, these statutes are in pari materia and must be construed and applied harmoniously and consistently.[6] (McKinney’s Cons Laws of NY, Book 1, Statutes § 221.) It is clear from the precise language of section 73 that the Legislature has elected not to prohibit all compensated testimonial appearances by its employees.[7] To ignore this fact and apply section 74 in such a way as to prohibit all compensated appearances by State employees against the State’s interest would create confusion among those employees and disrupt the Legislature’s well-defined plan for maintaining equilibrium between the official duties and the private interests of those employees.
No State property or resources were used for Benedict’s consultation with Nichelle Gilbert. There is no indication that any SUNY student was involved in her care. Interpreting section 73 in a way that precludes a health care professional who serves as an unpaid lecturer at a SUNY Medical School from receiving compensation for an appearance on her behalf simply because he is a member of a clinical practice plan would raise grave concerns about patients’ rights and the recognized goal *638 of the clinical practice plan system.[8] Our interpretation strikes an orderly balance between the purpose of the clinical practice plans and the objective of section 73 to reasonably regulate the business and professional activities of certain State employees. A contrary result might discourage health care professionals from accepting part-time faculty posts with SUNY and participating in clinical practice plans that provide opportunities to further the education of its students.

. This subdivision also applies to any “elected official, member of the legislature, [or] legislative employee.” (Public Officers Law § 73 [3] [a].)

. Public Officers Law § 73-a requires that State employees who hold policy-making positions or receive annual compensation in excess of the rate fixed for salary grade 24 by Civil Service Law § 130 (1) (a) shall file annual statements of financial disclosure. Civil Service Law § 130 (1) (a) fixes the top salary for grade 24 at $63,846. It is undisputed that Dr. Benedict was not required to file such a financial disclosure statement and, in any event, he was not called to testify against SUNY.

. Given the mandate for their payment found in CPLR 2303, witness fees and traveling expenses of those who testify under the compulsion of a subpoena are implicitly excluded from the definition.

. Like other members of the faculty, Benedict is entitled to use the research facilities, staff, equipment and supplies of the Neurology Department.

. As a consequence, Benedict is not allowed to be a member of United University Professions, the bargaining agent for the professional staff and faculty of the State University. This is a matter of some interest as clinical practice plans, once authorized by statute, are now created through collective bargaining agreements with applicable negotiating units. (See, Frontier Ins. Co. v State of New York, 146 Misc 2d 237, 243.)

. Sections 73 and 74 were added to the Public Officers Law by chapters 695 and 696, respectively, of the Laws of 1954. Both were subsequently amended by chapter 941 of the Laws of 1964, chapter 1012 of the Laws of 1965 and chapter 764 of the Laws of 1983.

. Section 73 only limits compensated appearances in the Court of Claims. Thus, State employees are not so restricted when they appear for defendants in criminal actions or for plaintiffs in civil actions in other courts against State employees who are entitled to indemnification pursuant to Public Officers Law § 17.

. The objective of these plans is to facilitate recruitment of high-caliber health care professionals as SUNY faculty members by allowing them to maintain private practices. At SUNY Buffalo, the plans also provide the patients on whom students are trained at affiliated hospitals. (See, Frontier Ins. Co. v State of New York, 146 Misc 2d 237, 242-245, supra.)